UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| DAMON KIMMEL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No.: 1:16-cv-00161-PPS-SLC |
| v. ) | |
| ) | |
| HOUSING AUTHORITY OF ) | |
| SOUTH BEND, ) | |
| ) | |
| Defendant. ) | |

**BRIEF IN SUPPORT OF DEFENDANT'S
<u>MOTION TO DISMISS PLAINTIFF'S COMPLAINT</u>**

Plaintiff, Damon Kimmel, claims the Housing Authority of South Bend violated his due process and equal protection rights and the United States Housing Act ("USHA") by closing its Section 8 voucher waiting list and by considering tenant history during the Section 8 application process. However, Kimmel lacks standing to bring his claims because he never applied to the Housing Authority's Section 8 program. Even if Kimmel had standing, his claims suffer a fundamental flaw: The Housing Authority did not violate the USHA or applicable regulations by closing its Section 8 waiting list or by allegedly including tenant history in its Section 8 screening policy. This fundamental flaw dooms all of Kimmel's claims. Kimmel's claims fail for additional reasons, including: the USHA does not provide him a private right of action; he does not have a property interest sufficient to sustain his due process claims; he does not allege the discriminatory intent necessary to sustain his equal protection claim; and he fails to allege a basis for municipal liability to sustain his constitutional claims. Accordingly, the Housing Authority respectfully requests the Court dismiss all of Kimmel's claims with prejudice.

## **KIMMEL'S ALLEGATIONS**[1]

Kimmel, an adult male with a developmental disability, receives his sole income from the Social Security Administration's Supplemental Security Income ("SSI") program. (Compl. ¶¶ 1, 4.) For several months in 2015 and 2016, Kimmel lived in his own apartment, paying rent from his SSI benefits. (Compl. ¶ 4.) However, Kimmel's previous landlord filed an "eviction lawsuit" against him in St. Joseph Superior Court Small Claims Division. (*Id.*) Kimmel is "countersuing" his previous landlord for retaliation. (*Id.*) Kimmel was not evicted; rather, he moved into his mother's home, where he currently resides. (*Id.*)

The Housing Authority, an Indiana municipal housing authority, "administers the Section 8 voucher program in the city of South Bend."[2] (Compl. ¶ 6.) The Housing Authority receives funding from the United States Department of Housing and Urban Development ("HUD"), the State of Indiana and the City of South Bend. (*Id.*)

Kimmel has not applied for a Section 8 voucher from the Housing Authority. (Compl. ¶¶ 1, 5, 14.) However, Kimmel claims he "wants the opportunity to receive a Section 8 voucher for housing available in South Bend, IN." (Compl. ¶ 1.) Kimmel claims he "would benefit from a Section 8 voucher because he would receive a rent subsidy, supplementing his limited income, enabling him to live in an inspected apartment and permit him to be independent in a socially integrated setting." (Compl. ¶ 5.)

---

[1] The allegations in the Complaint are taken as true only for purposes of this Motion to Dismiss.

[2] The Housing Choice Voucher Program, referred to by Kimmel and in this Brief as the "Section 8" program, is the federal government's major program for assisting very low-income families, the elderly, and the disabled to afford decent, safe, and sanitary housing in the private market. A housing subsidy is paid to the landlord directly by the public housing authority on behalf of the participating family. The family then pays the difference between the actual rent charged by the landlord and the amount subsidized by the program. *See HUD's Housing Choice Vouchers Fact Sheet,* http://portal.hud.gov/hudportal/HUD?src=/topics/housing_choice_voucher_program_section_8 (visited on July 7, 2016); *see also* Compl. ¶ 9.

Kimmel anticipates facing difficulties if he applies for a voucher. (Compl. ¶ 14.) For example, Kimmel questions his ability to obtain a voucher because he believes the Housing Authority "has not issued Section 8 vouchers for many years and maintains a waiting list for vouchers which lists hundreds of eligible individuals." (Compl. ¶ 10.) Moreover, Kimmel claims the Housing Authority has closed its Section 8 waiting list, and "[i]t is unclear if Kimmel could add his name to the list or, if became listed, how soon his position on the list would advance." (*Id*.) Kimmel alleges numerous management and fiscal problems interfere with the Housing Authority's administration of its Section 8 program, which led to the alleged failure to issue vouchers and closure of its waiting list. (Compl. ¶¶ 7-8, 10-14.)

Kimmel anticipates another difficulty if he were to apply for a Section 8 voucher. Kimmel claims "[o]n information and belief" that the Housing Authority "denies or restricts eligibility [for Section 8 vouchers] if applicants have been evicted or otherwise sued by landlords." (Compl. ¶ 15.) Kimmel apparently believes this alleged selection criteria would impair his ability to obtain a Section 8 voucher because of his previous landlord's "eviction lawsuit" against him. (*Id.*)

Kimmel claims the Housing Authority's closure of its Section 8 waiting list and alleged tenant history screening policy violated: (1) the USHA (First Claim); (2) the due process and equal protection clauses of the Fourteenth Amendment to the United States Constitution (Second Claim); (3) the due course of law clause of the Indiana Constitution (Third Claim); and (4) the equal privileges clause of the Indiana Constitution (Fourth Claim). (Compl. ¶¶ 20-23.) Kimmel brings these claims individually and as a representative of a putative class of "all past, current and future individuals (1) excluded from receiving Section 8 benefits because the Housing Authority closed the waiting list or (2) excluded because of past or pending litigation

3

brought against them by landlords (C) [sic] and who suffered or likely to suffer injuries as a result of the exclusions." (Compl. ¶ 17.J.)

## ARGUMENT

### I.     Legal Standards

Federal Rule of Civil Procedure 12(b)(1) permits a defendant to seek the dismissal of a complaint if a court lacks subject matter jurisdiction.  Kimmel bears the burden of establishing the elements necessary for jurisdiction, including standing, have been met.  *Scanlan v. Eisenberg*, 669 F.3d 838, 841-42 (7th Cir. 2012); *United Phosphorus, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003) (overruled on separate grounds).  "If subject matter jurisdiction is not evident on the face of the complaint, [then] the ... Rule 12(b)(1) [motion is] analyzed [like] any other motion to dismiss, by assuming for purposes of the motion that the allegations in the complaint are true." *United Phosphorus, Ltd.*, 322 F.3d at 946.  But "if the complaint is formally sufficient but the contention is that there is in fact no subject matter jurisdiction, [then] the movant may use affidavits and other material to support the motion." *Id.*

Federal Rule of Civil Procedure 12(b)(6) permits a defendant to seek dismissal of a complaint that fails to state a claim upon which relief can be granted.  When deciding a motion to dismiss under Rule 12(b)(6), the Court must accept as true any well-pleaded factual allegations, but conclusory allegations are not entitled to this presumption of truth. *McCauley v. City of Chicago,* 671 F.3d 611, 616 (7th Cir. 2011).  After disregarding conclusory allegations, the Court must determine whether the remaining factual allegations clear two hurdles.  *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007).  "First, the complaint must describe the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds upon which it rests."  *Id.* (quotation marks and ellipses omitted).  "Second, its allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility

4

above a speculative level." *Id.* (quotation marks omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Jones v. South Bend Housing Authority*, 2009 WL 1657466 (N.D. Ind. 2009). Plausibility does not require "detailed factual allegations," but the plaintiff must plead factual allegations that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. But, "[i]f the allegations give rise to an obvious alternative explanation, then the complaint may stop [] short of the line between possibility and plausibility of entitlement to relief." *McCauley*, 671 F.3d at 616. The Court should draw on its judicial experiences and common sense to determine whether a complaint states a plausible claim. *Iqbal*, 556 U.S. at 679.

The Complaint establishes Kimmel does not have standing to bring his claims because he has not applied for a Section 8 voucher. Even if Kimmel had standing, his claims do not clear either the notice hurdle or the plausibility hurdle.

**II.     Kimmel Lacks Standing to Bring His Claims**

There are two separate limitations on standing: constitutional and prudential. Article III of the Constitution restricts federal judicial power to deciding live or justiciable "cases" or "controversies." *Hollingsworth v. Perry*, 133 S.Ct. 2652, 2661 (2013). "For there to be such a case or controversy, it is not enough that the party invoking the power of the court have a keen interest in the issue. That party must also have 'standing' …" *Id.* The Supreme Court has established a set of requirements that together make up the "irreducible constitutional minimum of standing." *Lexmark Intern., Inc. v. Static Control Components, Inc.*, 134 S.Ct. 1377, 1386, (2014) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). This constitutional minimum, often referred to as Article III standing, is jurisdictional. *Dunnet Bay Const. Co. v.*

5

*Borggren*, 799 F.3d 676, 688 (7th Cir. 2015).  And at the pleading stage, "the plaintiff must 'clearly … allege facts demonstrating' each element." *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1547 (2016) (citing *Warth v. Seldin*, 422 U.S. 490, 518 (1975)).

To meet the constitutional minimum standing requires, a plaintiff must have (1) suffered an injury-in-fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. *Lujan*, 504 U.S. at 560-61.  To establish injury-in-fact, Kimmel must show he suffered an "invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Spokeo, Inc.*, 136 S.Ct. at 1547 (2016) (citing *Lujan*, 504 U.S. at 560).  "For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'" *Id.* at 1548.  A generalized grievance is not enough; a plaintiff must have more than merely an interest in seeing the law obeyed. *Hollingsworth*, 133 S.Ct. at 2662; *Lujan*, 504 U.S. at 572–78.  But, an injury-in-fact must be both concrete *and* particularized. *Spokeo, Inc.*, 136 S.Ct. at 1548.  "A 'concrete' injury must be 'de facto'; that is, it must actually exist." *Id.* (citing Black's Law Dictionary 479 (9th ed. 2009)).  Indeed, to satisfy the injury-in-fact requirement, Kimmel "must establish that [he] has sustained or is immediately in danger of sustaining some direct injury." *Scanlan,* 669 F.3d at 841-42 (quoting *Wis. Right to Life, Inc. v. Schober*, 366 F.3d 485, 489 (7th Cir. 2004) (quoting *Tobin for Governor v. Ill. State Bd. of Elections*, 268 F.3d 517, 528 (7th Cir. 2001)). "Mere speculation is not enough to establish an injury in fact." *Id.*

Prudential standing is a "nonconstitutional doctrine, entirely judge-made," which "precludes the federal courts from exercising jurisdiction over some types of case that Article III would not forbid the courts to adjudicate." *MainStreet Organization of Realtors v. Calumet City*, Ill., 505 F.3d 742, 745 (7th Cir .2005).  Unlike the constitutional limits on standing, prudential limitations are not jurisdictional and may be disregarded in certain situations. *Dunnet Bay*, 799

F.3d at 689. The Supreme Court continues to apply the prudential standing doctrine, although it is somewhat in tension with federal courts' "virtually unflagging" obligation to hear and decide cases within its jurisdiction. *Lexmark Intern.*, 134 S.Ct. at 1386 (*quoting Sprint Communications, Inc. v. Jacobs*, 134 S.Ct. 584, 591 (2013)). Prudential limitations "encompass ... at least three broad principles: the general prohibition on a litigant[s] raising another person's legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked." *Id.*

Kimmel cannot meet the constitutional minimum elements of standing. Indeed, Kimmel admits that the alleged failure to issue vouchers and closure of the waiting list are "difficulties Kimmel will face *if* he applies to be listed." (Compl. ¶ 14) (emphasis added). Kimmel has not applied for a Section 8 voucher and the Housing Authority has taken no action against him. Moreover, Kimmel has not alleged facts sufficient to show that he is eligible to receive Section 8 benefits or ultimately receive a Section 8 voucher based on applicable preferences. Therefore, Kimmel cannot establish standing because he has suffered no actual injury, and he has failed to allege facts sufficient to show a favorable judicial decision (*e.g.,* an order requiring the Housing Authority to open its Section 8 waiting list or issue vouchers) would redress any injury he claims to have suffered. *Price v. Pierce*, 823 F.2d 1114, 1118–19 (7th Cir. 1987) (explaining that for low-income plaintiffs to have standing to bring a lawsuit to enforce a HUD contract relating to housing subsidies for federal housing, they had to satisfy the formal requirements for eligibility, have made an application, and have been placed on the waiting list for the housing); *Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 166-71 (1972) (plaintiff who had never applied for membership lacked standing to challenge fraternal organization's alleged discriminatory membership policies); *Freedom From Religion Foundation v. Lew*, 773 F.3d 815, 821 (7th Cir.

2014) (holding that plaintiffs lacked standing to challenge parsonage exemption as unconstitutional establishment of religion "without having personally claimed and been denied the exemption.")

Moreover, Kimmel lacks standing because as an individual who may be eligible for Section 8, he asserts nothing more than generalized grievances "shared in substantially equal measure by a large of class of citizens." *Warth*, 422 U.S. at 499. Indeed Section 1437f(o) benefits are available to "very low-income families," among others, (42 U.S.C. 1437f(o)(4)) which includes families whose incomes do not exceed 50% of the median income for the area (42 U.S.C. § 1437a(b)(2)).[3] Kimmel's claims could be raised by any individual potentially eligible for Section 8. Kimmel confirms as much by identifying the putative class to include anyone who is unable to apply for Section 8 benefits because the waiting list is closed or anyone who may be excluded from receiving Section 8 because of past or pending litigation by a landlord. (Compl. ¶ 17J.)[4]

### III.    Plaintiff's USHA Claim Fails

Kimmel claims the Housing Authority violated Section 1437f of the USHA by its alleged "failure to administer Section 8 voucher benefits as required by statute." (Compl. ¶ 20.)

---

[3] Section 8 of the USHA (42 U.S.C. § 1437f) has recently been amended by the Housing Opportunity Through Modernization Act of 2016, which became law on July 29, 2016. Pub. L. No. 114-201, § 102, 130 Stat. 782, 786-92 (2016). The Act does not substantively impact the Housing Authority's arguments for purposes of this Brief.

[4] Such a putative class fails as "fatally indefinite" and is insufficient to confer standing to Kimmel. *See Jamie S. v. Milwaukee Public Schools*, 668 F.3d 481, 495 (7th. Cir. 2012) (declining to certify a putative class because, among other reasons, the class was "fatally indefinite"); *Adashunas v. Negley*, 626 F.2d 600, 604 (7th Cir. 1980) (holding that "the proposed class of plaintiffs is so highly diverse and so difficult to identify that it is not adequately defined or nearly ascertainable" to warrant certification). The indefinite nature of the class is only one of many flaws associated with Kimmel's putative class allegations. Recognizing that courts generally disfavor motions to strike or dismiss class allegations, however, the Housing Authority anticipates addressing this and other fatal flaws related to the putative class in a separate filing should any portion of this lawsuit survive this Motion to Dismiss. *See DuRocher v. Nat'l Collegiate Athletic Ass'n*, No. 1:13-CV-01570-SEB, 2015 WL 1505675, at *4 (S.D. Ind. Mar. 31, 2015) (collecting and citing to authority related to class certification issues being better raised after parties have had opportunities to conduct class discovery and fully brief motions for certification).

However, Kimmel fails to describe with any specificity the basis for the alleged violation, or any facts suggesting he was denied a specific right in the USHA by the Housing Authority. *Damhesel v. Chicago Hous. Auth.*, 2015 WL 7077332, *2 (N.D. Ill. Nov. 13, 2015) (Section 8 applicant's USHA claim dismissed in part because he "failed to allege facts to suggest that he was denied any specific right in the Housing Act by the housing authority.")  Therefore, Kimmel's USHA claim should be dismissed because he fails to provide sufficient detail to notify the Housing Authority of the basis of his claim.

Further, Kimmel has no private right of action under Section 1437f.  *Hill v. Richardson*, 7 F.3d 656, 658 (7th Cir. 1993) ("§ 1437f does not create a private right of action"); *Davis v. Sellas*, 580 F. App'x 467, 468 (7th Cir. 2014), reh'g denied (Jan. 16, 2015) (no private right of action under Section 1437f for tenant to sue landlord who provided subpar maintenance); *Damhesel*, 2015 WL 7077332 at *2 (Section 8 applicant's USHA dismissed; the court declined to recognize such a private right of action that was not specifically provided by Congress in the USHA); *see also Brown v. Bennettsville Hous. Auth.,* No. CA 4:09-1464-RBH, 2009 WL 2229620, at *2 (D.S.C. July 23, 2009) (plaintiff who claimed she was denied a housing voucher because the waiting list was closed due to "funding issue" had no federal private cause of action to enforce her complaint).

Moreover, any attempt to assert the USHA through Section 1983 fails because Section 1437f(o) contains no language conferring enforceable rights.  *Davis*, 580 F. App'x at 468 (*citing Gonzaga Univ. v. Doe*, 536 U.S. 273, 283-84 (2002) *and McCready v. White*, 417 F.3d 700, 703 (7th Cir. 2005)); *Thomas v. Butzen*, No. 04 C 5555, 2005 WL 2387676, at *11 (N.D. Ill. Sept. 26, 2005) (dismissing with prejudice Section 1983 claims based on Section 1437f(o) because the statute "does not create a private right of action or contain any indication that Congress intended it to confer enforceable rights on plaintiffs.")  To create rights enforceable under Section

9

1983, the language of the statute must be "clear and unambiguous." *McCready*, 417 F.3d at 703 (*citing Gonzaga Univ.*, 536 U.S. at 290). Section 1437f(o) contains no such language, therefore any Section 1983 claim rooted in alleged violation of Section 1437f of the USHA warrants dismissal with prejudice.

Nevertheless, even if Kimmel could rely on Section 1983 to support his USHA claim, that claim fails because Kimmel has not alleged facts suggesting the Housing Authority violated the law. *Price*, 823 F.2d at 1122 (Section 1983 claim against housing officials failed because there was no violation of the USHA). Indeed HUD regulations permit the Housing Authority to stop accepting new Section 8 applications if it determines that the existing waiting list contains an adequate pool for use of available program funding. 24 C.F.R. § 982.206(c). The relevant regulation provides:

> (c)   Closing waiting list. If the PHA determines that the existing waiting list contains an adequate pool for use of available program funding, the PHA may stop accepting new applications, or may accept only applications meeting criteria adopted by the PHA.

*Id.* Here, Kimmel merely alleges the Housing Authority closed the waiting list—as it is allowed to do under the law. And, Kimmel has not and cannot claim that fails to allege any facts suggesting the Housing Authority's waiting list contained an inadequate pool for use of program funding. To the contrary, Kimmel admits there are "hundreds" of individuals on the list, demonstrating the Housing Authority already has an adequate pool on the waiting list and therefore may properly close the waiting list pursuant to federal regulations. No facts alleged support a violation of the USHA.

Similarly, while Kimmel alleges (albeit incorrectly) that the Housing Authority is not issuing vouchers, he has not and cannot demonstrate that the Housing Authority's alleged inaction is constitutes a violation of any obligation under the law. *See Price*, 823 F.2d at 1117

10

(no requirement in the USHA in effect at the relevant time related to subsidy of newly constructed or substantially rehabilitated housing that a developer must rent all apartments they have committed to rent); *Daniels v. U. S. Dep't of Hous. & Urban Dev.*, 518 F. Supp. 989, 993 (S.D. Ohio 1981) (HUD is not required to make units it controls 100% available for occupancy).

And, while Kimmel speculates that the Housing Authority would deny his Section 8 benefits because of a pending eviction action with landlord, the Housing Authority has never received Kimmel's application, let alone denied it. *Concentra*, 496 F.3d at 776 (allegations must rise above a speculative level). Moreover, even if the Housing Authority adopted a policy of considering a Section 8 applicant's tenant history, such a policy would not violate the USHA or HUD regulations, which allow housing authorities to "opt to screen applicants for family behavior or suitability for tenancy." 24 C.F.R. § 982.307(a). Again, Kimmel has failed to allege facts plausibly suggesting the Housing Authority violated the USHA.

Kimmel's USHA claim fails because he has no private right of action to assert such a claim, and even if he did, he fails to plausibly allege a violation of the law.

**IV.     Kimmel's Section 1983 Due Process and Due Course of Law Claims Fail**

Kimmel's Section 1983 due process and due course of law claims fail because he does not provide sufficient detail to give the Housing Authority fair notice of what his claim are and the grounds upon which they rest. Kimmel does not specify whether his due process claim is substantive or procedural in nature. Indeed, Kimmel does not allege how the Housing Authority's administration of Section 8 implicates due process at all, instead concluding that the Housing Authority has violated the due process clause "by its arbitrary administration of the Section 8 voucher program and its denial of benefits to Kimmel and the Class." (Compl. ¶ 21.) Kimmel's lack of specificity dooms these claims. *A.B. ex rel. Kehoe v. Hous. Auth. of S. Bend*, No. 3:11 CV 163 PPS, 2011 WL 4005987 (N.D. Ind. September 8, 2011); *A.B. ex rel. Kehoe v.*

11

*Hous. Auth. of S. Bend,* No. 3:11 CV 163 PPS, 2012 WL 1877740, *11 (N.D. Ind. May 18, 2012), *aff'd sub nom. A.B. ex rel. Kehoe v. Hous. Auth. of S. Bend, Indiana*, 498 F. App'x 620 (7th Cir. 2012).

### A. Kimmel Has No Protectable Property Interest in Section 8

Kimmel also cannot plausibly state either a procedural or substantive due process claim because he has no protectable property interest in a Section 8 voucher. A threshold requirement of all due process claims is the existence of a protected property or liberty interest. *Citizens Health Corp. v. Sebelius*, 725 F.3d 687, 693-94 (7th Cir. 2013); *Khan v. Bland*, 630 F.3d 519, 535 (7th Cir. 2010). Kimmel cannot meet this threshold requirement.

Kimmel admits he is not a participant (or even an applicant) in the Housing Authority's Section 8 program. Kimmel's due process claims (substantive and procedural) therefore fail because Kimmel has no protectable property or liberty interest sufficient to trigger due process requirements. *Luvert v. Chicago Hous. Auth.*, 142 F. Supp. 3d 701, 713-15 (N.D. Ill. 2015); *Damhesel v. Chicago Hous. Auth.*, 2015 WL 7077332 (Nov. 13, 2015) (no protectable property interest for Section 8 applicant whose voucher expired). The *Luvert* case is instructive on this issue. There, the plaintiff was a Section 8 applicant who received a voucher (unlike Kimmel), but did not enter into a lease before the voucher expired, and the housing authority refused to extend its term. *Id.* at 707. Luvert argued she was improperly denied a hearing in violation of her due process rights, but the Court dismissed her procedural and substantive due process claims because she had no protectable property interest sufficient to either due process claim. *Id.* at 713-14. An eligible applicant for Section 8 has no entitlement to a housing subsidy, even if he has been issued a voucher. *Id.* at 714-15. The "bare receipt of a voucher does not cut it." *Id.* at 714 (citing *Khan v. Bland*, 630 F.3d 519, 535 (7th Cir. 2010) (no procedural due process right for landlords to participate in the voucher program); *also citing Eidson v. Pierce*, 745 F.2d

453 (7th Cir. 1984) (applicants have enforceable rights to Section 8 housing in particular projects)).  Indeed, a "mere opportunity to acquire property … does not itself qualify as a property interest protected by the Constitution." *Id.* at 715 (citing *Head v. Chicago Sch. Reform Bd. of Trs.*, 225 F.3d 794 (7th Cir. 2000)); *see also Castillo v. San Antonio Hous. Auth.*, No. CIVA SA-06-CA-841-XR, 2007 WL 208611, at *5 (W.D. Tex. Jan. 24, 2007) (federally-subsidized rental assistance is not a "statutory entitlement" protected by the due process clause).

Here, Kimmel does not allege he is a Section 8 participant—or even an applicant.  He therefore has no protectable property or liberty interest in federally-subsidized housing, and his substantive and procedural due process claims fail.

### B. The Housing Authority's Compliance with the Law Dooms This Claim

Even if Kimmel had a protectable property or interest, Kimmel's procedural due process claims fail for the additional reason that the Housing Authority's administration of the Section 8 program and closure of the waiting list did not *deprive* him of a constitutionally protected liberty interest.  To the contrary, as described above, the Housing Authority is permitted under the USHA to close its waiting list, and Kimmel's allegations related to failure to issue vouchers and "arbitrary" administration of Section 8 are not only ambiguous, but do not plausibly suggest unlawful activity or a deprivation of Kimmel's rights.

Any substantive due process claim fails for similar reasons.  Kimmel has no fundamental right to participate in Section 8.  *Khan*, 630 F.3d at 536 (7th Cir. 2010) (landlord had no fundamental right to government subsidy); *Luvert*, 142 F.Supp.3d at 713 (dismissing substantive due process claim in part because the Section 8 applicant had no fundamental right to government subsidy).  Therefore, any substantive due process claim fails unless the Housing Authority's actions were arbitrary or irrational.  *Grant v. City of Chicago*, 594 F. Supp. 1441, 1451 (N.D. Ill. 1984) (describing the rational basis test).

13

Again, Kimmel's allegations demonstrate the Housing Authority comported with the law by closing the waiting list because it has hundreds of individuals already waiting for vouchers. 24 C.F.R. § 982.206(c). Similarly, Kimmel fails to explain how the Housing Authority's administration of the Section 8 program, including its alleged failure to issue vouchers or the alleged adoption of tenant history screening criteria, is arbitrary or irrational. Kimmel acknowledges the significant demand for Section 8, and suggests through vague and irrelevant references to "administrative and fiscal problems" (Compl. ¶ 7) as well as an opinion article in The South Bend Tribune (Compl. ¶ 8) that the lack of voucher issuance is illegitimate, but these suggestions are unfounded. No facts suggest the Housing Authority's alleged failure to issue vouchers or its administration of Section 8 is illegitimate, arbitrary, or irrational. Indeed, the Seventh Circuit has recognized that "there are not enough Section 8 housing units to accommodate all who are eligible and willing to take them." *Eidson v. Pierce*, 745 F.2d 453, 457 (7th Cir. 1984). The Housing Authority must therefore allocate its limited resources among a large number of eligible applicants. *See Id.* Because Kimmel has failed to allege facts suggesting the Housing Authority has acted unlawfully, his substantive due process claim fails. *See Burrell v. City of Kankakee*, 815 F.2d 1127, 1129 (7th Cir. 1987) (affirming motion to dismiss substantive due process claim based on alleged violation of Section 8 obligations to provide written reasons for denial of the plaintiff's proposal—the city complied with Section 8 requirements).

## C. Kimmel Fails to Allege a Basis for "*Monell*" Liability

In addition, all of Kimmel's Section 1983 claims fail because he does not allege a basis for "*Monell*" liability. To sustain his Section 1983 claim, Kimmel must establish he was injured and a Housing Authority policy, custom, or practice proximately caused this injury. *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 694-95 (1978). There are three ways Kimmel

can prove a Housing Authority policy or custom caused a violation of his constitutional rights: "(1) an express policy that, when enforced, causes a constitutional deprivation. . . ; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or use with the force of law. . . ; or (3) . . . that [a] constitutional injury was caused by a person with final policymaking authority." *Baxter by Baxter v. Vigo Cnty. Sch. Corp.*, 26 F.3d 728, 734-35 (7th Cir. 1994)(internal quotations and citations omitted).  Kimmel must assert specific factual allegations to support his claim that a municipal policy caused his alleged injury; conclusory allegations do not suffice. *Strauss v. City of Chicago*, 760 F.2d 765, 767 (7th Cir. 1985)(citations omitted); *Boehn v. City of East Chicago, Ind.*, 799 F.2d 1180, 1188-89 (7th Cir. 1986)(citations omitted).

Kimmel concludes that "deficiencies" in the Housing Authority's administration of Section 8 is "part of official policy or custom," (Compl. ¶ 6) but conclusory allegations are not enough to establish a basis for *Monell* liability.  *Strauss*, 760 F.2d at 767.  And, such nebulous "deficiencies," including closure of the waiting list (Compl. ¶¶ 6, 11), have no apparent link to a constitutional violation alleged because Kimmel has not even applied for housing.  *Canton v. Harris*, 489 U.S. 378, 388 (1989) (to establish *Monell* liability, there must be a direct causal link between a municipal policy or custom and the alleged constitutional deprivation).  Kimmel's Section 1983 claims should therefore be dismissed.  *See, e.g., Campbell v. Berwyn*, 815 F. Supp. 1138, 1141-42 (N.D. Ill. 1993) (plaintiffs' Section 1983 equal protection race discrimination claim dismissed where plaintiffs failed to allege that discriminatory acts were the result of a municipal policy, custom, or practice); *Younger v. Wright*, 2014 WL 909664, at *2 (D. Conn. Mar. 7, 2014) (granting motion to dismiss Section 1983 claim by Section 8 applicant because she failed facts sufficient to show a basis for municipal liability under *Monell*).

For all of these reasons, Kimmel's possible federal procedural and substantive due process claims fail as a matter of law. Because Indiana due course of law claims are analyzed the same as federal due process claims, Kimmel's third claim also fails for these same reasons. *See Lake Cent. Sch. Corp. v. Scartozzi*, 759 N.E.2d 1185 (Ind. Ct. App. 2001).

### D.     Kimmel's Section 1983 Equal Protection and Equal Privileges Claims Fail

The Fourteenth Amendment prohibits states from "deny[ing] to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV. Kimmel can establish an equal protection violation by showing the Housing Authority's actions had a discriminatory effect and the defendant acted with discriminatory intent. Chavez *v. Ill. State Police*, 251 F.3d 612, 635–36 (7th Cir.2001); *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 264 (1977). To prove discriminatory effect, a plaintiff must assert that he is a "member[ ] of a protected class, that [he is] otherwise similarly situated to members of the unprotected class, and that [he] was treated differently from members of the unprotected class." *Chavez*, 251 F.3d at 636 (citing *Greer v. Amesqua*, 212 F.3d 358, 370 (7th Cir.2000). Evidence of discriminatory intent may include racial remarks or deviations from established practices or procedures. *See Arlington Heights*, 429 U.S. at 267; *Chavez*, 251 F.3d at 646 (7th Cir.2001) (citing *DeWalt v. Carter*, 224 F.3d 607, 612 n. 3 (7th Cir.2000)).

Kimmel fails to allege either discriminatory effect or intent. For example, although Kimmel alleges he is disabled (Compl. ¶ 4), he does not allege any other class member is disabled. Moreover, Kimmel does not allege the Housing Authority treated him or any class member differently than similarly situated members of the unprotected class. Indeed the Housing Authority took *no* action against Kimmel. *See Pondexter v. Allegheny Cty. Hous. Auth.*, No. CIV.A. 11-857, 2012 WL 3611225, at *8 (W.D. Pa. Aug. 21, 2012) (no discrimination where the housing authority did not receive or act on the plaintiff's housing

16

application). Moreover, Kimmel admits the waiting list is closed to everyone, and claims (incorrectly) that the Housing Authority has not issued vouchers to anyone.

Not only does Kimmel fail to allege discriminatory effect, he fails to allege the Housing Authority acted with discriminatory intent. Kimmel does not allege the Housing Authority made discriminatory statements, varied from normal policy when issuing vouchers or granting access to the waiting list, or did anything else to suggest discriminatory animus. To the contrary, as discussed above, Kimmel's allegations establish the Housing Authority had legitimate reasons for its actions, including closing the waiting list in accordance with HUD regulations.

Kimmel's failure to allege discriminatory effect or intentional discrimination dooms his equal protection claim. *Kehoe*, 498 F. App'x at 623 (affirming dismissal of plaintiff tenant's equal protection claim for failure to adequately allege discriminatory intent); *Smith v. Housing Auth. of South Bend,* 867 F.Supp.2d 1004, 1017 (N.D. Ind. 2012) (same). Moreover, as explained above, Kimmel's Section 1983 claims fail because he has not alleged any basis for *Monell* liability.

Accordingly, Kimmel's equal protection claim should be dismissed. Because Indiana equal privilege claims also requires a showing of disparate treatment, Kimmel's fourth claim also fails for these same reasons. *Young v. Indiana Dep't of Correction*, 22 N.E.3d 716, 719 (Ind. Ct. App. 2014), transfer denied sub nom. *Young v. Indiana Dep't of Correction*, 29 N.E.3d 124 (Ind. 2015) (both the federal equal protection and state equal privileges clauses ensure equal treatment under the law, and both require a showing of disparate treatment in order to be successful) (citations omitted).

## CONCLUSION

For the foregoing reasons, Defendant requests that all Plaintiff's claims be dismissed in their entirety.

BARNES & THORNBURG LLP

*/s/ Michael P. Palmer*
Michael P. Palmer
Kyra E. Clark
700 1st Source Bank Center
100 N. Michigan St.
South Bend, IN 46601-1632
Michael.Palmer@btlaw.com
Kyra.Clark@btlaw.com
Attorney Palmer: (574) 237-1135
Attorney Clark: (574) 237-1249

Attorneys for Defendant

## CERTIFICATE OF SERVICE

I hereby certify that on August 19, 2016 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following:  L. Kent Hull, 105 E. Jefferson Blvd., Suite 800, South Bend, IN  46601.

BARNES & THORNBURG LLP

By:    */s/ Michael P. Palmer*

DMS KCLARK2 4207555v3