UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

DAMON KIMMEL,
Plaintiff,

vs.                                                                      Case No. 1:16-cv-00161-PPS-SLC

HOUSING AUTHORITY
OF SOUTH BEND,
Defendant.

PLAINTIFF'S BRIEF OPPOSING MOTION
TO DISMISS BY DEFENDANT

Introduction

Defendant Housing Authority of South Bend ("HASB") has filed (dks. 23 and 24) a Motion to Dismiss, citing Fed. R. Civ. Proc. 12(b)(1) and (b)(6), with supporting Brief. Plaintiff Damon Kimmel ("Kimmel") responds and opposes the Motion.

Argument

1. This Court has subject matter jurisdiction of this case because Kimmel has standing to sue HASB.

HASB filed no affidavits or other evidence, as it could have, to support its Motion to Dismiss under R. 12(b)(1) contending that this Court lacks subject matter jurisdiction. In considering a motion to dismiss for lack of subject matter jurisdiction, this Court "must accept the complaint's well-pleaded factual allegations as true and draw reasonable inferences from those allegations in the plaintiff's favor." *United Transp. Union v. Gateway W. Ry. Co.*, 78 F.3d 1208, 1210 (7th Cir. 1996). In the absence of "submitted evidentiary materials addressed to the jurisdictional question, [there is no] evidence …properly considered at the dismissal stage when the question raised is one of subject matter jurisdiction." *Id.*

1

Kimmel well-pleaded allegations in his Complaint (dk.1) state:

9. HUD describes the Section 8housing choice voucher program as "the federal government's major program for assisting very low-income families, the elderly, and the disabled to afford decent, safe, and sanitary housing in the private market. Since housing assistance is provided on behalf of the family or individual, participants are able to find their own housing, including single-family homes, townhouses and apartments." HUD states, "The participant is free to choose any housing that meets the requirements of the program and is not limited to units located in subsidized housing projects."
http://portal.hud.gov/hudportal/HUD?src=/topics/housing_choice_voucher_program_section_8 (visited May 15, 2016).

10. On information and belief, HASB has not issued Section 8 vouchers for many years and maintains a waiting list for vouchers which lists hundreds of eligible individuals. It is unclear if Kimmel could add his name to the list or, if became listed, how soon his position on the list would advance.

11. For years HASB has informally told potential applicants that the Section 8 vouchers were unavailable and that HASB would not add additional names to the Section 8 waiting list. At present the HASB website states that the "Section 8 Waiting List is now closed."
http://www.hasbonline.com/modules.php?op=modload&name=FAQ&file=index&myfaq=yes&id_cat=9 (visited May 16, 2016).

12. On February 19, 2015, the South Bend Tribune reported in an editorial, "As of 2012, the Housing Authority ran nine apartment complexes and 200 homes and administered more than 2,000 Section 8 vouchers. But money intended to be disbursed to needy families through vouchers and other programs was misused and the government ordered the repayment of $500,000."
http://www.southbendtribune.com/news/opinion/our_opinion/our-opinion-fresh-start-just-what-housing-authority-needs/article_b9df0c74-34f2-561a-83a7-eb33aad908d3.html (visited May 16 2015).

13. The serious management problems at HASB interfere with HASB's administration of the Section 8 voucher program. These difficulties are especially urgent for individuals who are poor, lack resources for professional assistance and must necessarily rely on HASB itself to advise them of their rights and opportunities in the Section 8 voucher program

14. The failure to issue vouchers and the status of the waiting list demonstrate the difficulties Kimmel will face if he applies to be listed. Kimmel seeks a determination by this Court of the reasons for closure of the waiting list and the availability of a Section 8 voucher to him in view of the administrative difficulties at HASB and the HUD

oversight of HASB, together with an order directing HASB to open the waiting list and to process applications.

15. On information and belief, in determining eligibility for Section 8 vouchers, HASB denies or restricts eligibility if applicants have been evicted or otherwise sued by landlords, as Kimmel has been sued.

(dk.1, at 4—5, ¶¶'s 9—15).

Since HASB has not contested these allegations, this Court must accept them for both the HASB Motion based on R. 12(b)(1) and that based on R. 12(B)(6).

Given his allegations, Kimmel may sue without having applied to HASB for a voucher because his application would be futile. The Court of Appeals, ruling in the context of Social Security benefits, has observed:

> It is true that, ordinarily, exhaustion of administrative remedies is not required if it would be futile, that is, if there is no reasonable prospect that the applicant could obtain any relief by pursuing them…[F]utility [is] the judge-made rule that allows a party to an administrative proceeding to bypass the administrative process by mounting a collateral attack rather than one on the merits in circumstances demonstrating a compelling need for immediate judicial review. If, therefore, the party wants to challenge a regulation that is preventing him from making his case on the merits and he cannot feasibly defer the challenge to the conclusion of the administrative proceeding, he can bring his judicial action forthwith.
> So futility is not an excuse for failure to exhaust administrative remedies, but futility plus hardship is….
> *Health Equity Res. Urbana, Inc. v. Sullivan,* 927 F.2d 963, 965–66 (7th Cir. 1991) (punctuation and citations omitted).

Kimmel's "interest in prompt judicial review is so compelling that deference to the agency's determination is inappropriate." *Lake Cty. Rehab. Ctr., Inc. v. Shalala,* 854 F. Supp. 1329, 1336 (N.D. Ind. 1994) (upholding right of skilled nursing facility to sue without exhaustion when threatened with loss of Medicare and Medicaid funds essential to operation).

Kimmel's allegations, citing published sources and HASB's website, alleges that HASB is dysfunctional in its administration of the Section 8 voucher program. His application to HASB

for a voucher would be futile. The urgency of his need for a voucher is clear from the fact of his poverty and his limitations.

HASB ignores the futility doctrine and appears to argue that, despite the dysfunction of HASB, Kimmel must nevertheless apply for a voucher despite the barren possibility that he would obtain a voucher. That contention conflicts with cases excusing exhaustion if a procedure was inadequate. *Daniels v. Area Plan Comm'n of Allen Cty.,* 306 F.3d 445, 457–58 (7th Cir. 2002) (holding that subject matter jurisdiction existed despite no exhaustion in an inverse condemnation challenge brought under 42 U.S.C. §1983 for injunctive and declaratory relief); *Lewis v. Helios Container Sys., Inc.*, 844 F. Supp. 408, 410 (N.D. Ill. 1993)("[T]he futility doctrine…allows a court to waive a requirement that an administrative agency initially consider an issue, where application to the agency would be futile.") (addressing Interstate Commerce Commission procedures, but holding doctrine inapplicable to primary jurisdiction issue; citation omitted).

Cases decided by the Court of Appeals for the Seventh Circuit "have recognized two exceptions to the requirement of administrative exhaustion. A plaintiff's failure to exhaust administrative remedies is excused: (1) where there has been a lack of meaningful access to the review procedures; and (2) where exhaustion of internal remedies would be futile." *Wilczynski v. Lumbermens Mut. Cas. Co.*, 93 F.3d 397, 402 (7th Cir. 1996) (reversing dismissal of ERISA claim; citation omitted). Kimmel observes that this Court followed *Wilczynski* in *Gipson v. Four Cty. Comprehensive Mental Health Ctr., Inc.*, 2016 WL 1059355, at *3 (N.D. Ind. Mar. 16, 2016), which Kimmel addresses below.

The Supreme Court has "recognized at least three broad sets of circumstances in which the interests of the individual weigh heavily against requiring administrative exhaustion.":

> First, requiring resort to the administrative remedy may occasion undue prejudice to subsequent assertion of a court action. Such prejudice may result, for example, from an unreasonable or indefinite timeframe for administrative action…. Second, an administrative remedy may be inadequate because of some doubt as to whether the agency was empowered to grant effective relief.…Third, *an administrative remedy may be inadequate where the administrative body* is shown to be biased or *has otherwise predetermined the issue before it.*
> *McCarthy v. Madigan*, 503 U.S. 140, 146–49 (1992) (emphasis added; punctuation and citations omitted; superseded by statute on other grounds).

The Seventh Circuit, quoting *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871(1990) has reiterated that, "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim." *Lac Du Flambeau Band of Lake Superior Chippewa Indians v. Norton,* 422 F.3d 490, 496 (7th Cir. 2005) (quoting *Lujan, id.,* at 889).

Kimmel has standing under *Lujan*. First, he alleges a "particularized" injury, 504 U.S. at 560, in that he wants a Section 8 voucher to enable his living independently and alleges why he cannot obtain one from HASB. While HASB could have disputed his allegation with affidavits supporting a R. 12(b)(1) motion, it has filed nothing in opposition.

Second, he alleges "a causal connection between the injury and the conduct complained of". *Id.* (citations omitted). Kimmel can't obtain a voucher because of the actions, or failures to act, of HASB. While HASB could have disputed his allegation with affidavits supporting a R. 12(b)(1) motion, it has filed nothing in opposition.

Third, he seeks equitable and compensatory relief from this Court of which it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.*, at

5

561 (punctuation and citation omitted). Among other remedies, this Court may issue an injunction directing HASB to consider his application for a voucher. While HASB could have disputed the need for a remedy with affidavits supporting a R. 12(b)(1) motion, it has filed nothing to support that contention.

Kimmel presented "concrete" allegations, *id.,* at 560, which HASB was entitled to refute. HASB instead hypothesized that he lacks standing and missed the opportunity to contest his standing with evidence. At this "pleading stage", *Lac Du Flambeau Band, id.,* his allegations are sufficient to establish standing.

HASB invokes the doctrine of "prudential standing" to justify dismissal of Kimmel's case. <u>Brief in Support of Defendant's Motion to Dismiss Plaintiff's Complaint</u> (dk. 24, at 6) ("<u>HASB Br.</u>"). HASB does not acknowledge that the Supreme Court has stated that "prudential standing" is a "misleading" label. *Lexmark Int'l, Inc. v. Static Control Components, Inc.,* 134 S. Ct. 1377, 1386 (2014). The Court recognized that the doctrine "is in some tension with our recent reaffirmation of the principle that a federal court's obligation' to hear and decide cases within its jurisdiction is virtually unflagging." *Id.*, (punctuation and citations omitted).

Application of the doctrine is limited to three purposes: "the general prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked." *Id.*, (punctuation and citations omitted). Speaking through Justice Scalia, a unanimous Court stated "a court…cannot limit a cause of action that Congress has created merely because 'prudence' dictates." *Id.*, at 1388. *Lexmark* upheld the plaintiff's standing.

Kimmel's case falls within none of the *Lexmark* categories. The prudential standing doctrine does not support dismissal. The Seventh Circuit has recently reiterated the "virtually unflagging obligation to decide cases within their Article III jurisdiction*." United States v. Funds in the Amount of $239,400*, 795 F.3d 639, 645 (7th Cir. 2015). (citing Lexmark; punctuation omitted). See also *Sheet Metal, Air, Rail, & Transp. Workers Local Union 20 v. Van's Indus., Inc*., 2015 WL 8180287, at *2 (N.D. Ind. Dec. 7, 2015) (considering *Lexmark* and holding that a plaintiff labor union had standing) and *Exodus Refugee Immigration, Inc. v. Pence*, 2016 WL 772897, at *7 (S.D. Ind. Feb. 29, 2016) (appeal pending, Case No. 16-1509, filed 8-22-16) (holding that refugee resettlement agency had prudential standing to obtain preliminary injunction prohibiting implementation of state's directive to state agencies not to pay federal grant funds to local refugee resettlement agencies for social services the agencies provided to Syrian refugees in Indiana).

*United States v. Funds in the Amount of $574,840*, provides an additional justification for Kimmel's standing: "At the pleading stage Article III standing is something to be alleged, not proved. All that must be alleged is an injury, personal to the person seeking judicial relief, that the court can redress… This is constitutional law 101…. Generally when a pleading alleges facts that if true confer Article III standing, the court's focus should move immediately to the merits." 719 F.3d at 651.

Kimmel's allegations are sufficient to establish his standing. The Supreme Court recognized the correct principle two centuries ago: "…it is a general and indisputable rule, that where there is a legal right, there is also a legal remedy by suit or action at law, whenever that right is invaded." *Marbury v. Madison*, 5 U.S. 137, 163 (1803) (quoting Blackstone's Commentaries).

7

2. Kimmel states a claim under the United States Housing Act.

*Wright v. City of Roanoke Redevelopment & Hous. Auth.*, 479 U.S. 418 (1987), held that public housing tenants stated a claim against a public housing authority which charged rent beyond that permitted by a provision of the United States Housing Act ("USHA"), 42 U.S.C.§1437d(k), and observed, "The intent to benefit tenants is undeniable." 479 U.S. at 430. See also *McDowell v. Philadelphia Hous. Auth. (PHA)*, 423 F.3d 233 (3d Cir. 2005) (discussing amendments to §1437 after *Wright* and remanding to the district court with instructions that "the tenants' motion to cite the PHA for civil contempt shall be granted, and an appropriate sanction shall be calculated in the manner described above." *Id.*, at 241).

HASB cites, HASB Br., at 9, *Hill v. Richardson*, 7 F.3d 656 (7th Cir. 1993) (and quotes the statement that "§1437f does not create a private right of action". *Id.*, at 658. HASB does not acknowledge that *Hill* approved an award of attorney fees to the plaintiffs, who had sued Indiana state officials for violating the USHA. *Hill* cites no authority for the statement just quoted, and the Seventh Circuit speculates about the proper applicability of 42 U.S.C. §1983 to support the plaintiffs' claim, stating that plaintiffs "had a colorable claim under § 1983 and are entitled to attorneys' fees…The judgment is vacated, and the case is remanded so that the district court may determine the appropriate award." 7 F.3d at 658.

Kimmel contends that, as in *Wright*, the intent of Section 8 to "benefit tenants is undeniable". While *Hill* based plaintiffs' right to attorney fees on §1983, the opinion recognizes "a difficult question given the plasticity of the standard under *Maine v. Thiboutot* and the tension between *Wright* and *Suter v. Artist M*." 7 F.3d at 658 (citations omitted).

8

Kimmel recognizes this Court's duty to follow controlling precedent, but he considers the right to sue under Section 8 as a question meriting "a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law" under Fed. R. Civ. Proc. 11(b)(2). See *Hively v. Ivy Tech Cmty. Coll., S. Bend*, 2016 WL 4039703 (7th Cir. July 28, 2016) (recognizing propriety of litigant's advancing argument against precedent, despite panel's refusal to overturn precedent).

3.  <u>Kimmel states a claim under the Fourteenth Amendment and §1983</u>.

HASB contends, <u>HASB Br.</u>, at 9, that Kimmel fails to state a claim under §1983. The decisions in *Wright, McDowell,* and *Hill* allowed tenants to sue under §1983 to obtain proper services from public housing authorities and officials.

This Court has recently stated that "[f]or purposes of a motion to dismiss, [this Court] take[s] as true all the well-pleaded facts alleged in the complaint, and draw all inferences from those facts in the light most favorable to [plaintiff]." *Gipson v. Four Cty. Comprehensive Mental Health Ctr., Inc.*, 2016 WL 1059355, at *1 (N.D. Ind. Mar. 16, 2016) (citation omitted). HASB does not accept the allegations, but contradicts the allegations. HASB contends that "while Kimmel alleges *(albeit incorrectly)* that the Housing Authority is not issuing vouchers, he has not and cannot demonstrate that the Housing Authority's alleged inaction is [sic] constitutes a violation of any obligation under the law." <u>HASB Br.</u>, at 10 (emphasis added).

HASB also mischaracterizes Kimmel's allegations. It states that he "fails to describe with any specificity the basis for the alleged violation, or any facts suggesting he was denied a specific right in the USHA by the Housing Authority." <u>HASB Br.</u>, at 9. That statement ignores paragraphs 9—15 of the Complaint. Kimmel alleges that HASB

9

has a management crisis which impairs his ability to obtain a voucher. (dk.1, at 4—5, ¶¶'s 9—15).

    4.  <u>Kimmel states a claim under the Fourteenth Amendment and 42 U.S.C. §1983</u>.

This Court has summarized the standards to determine the sufficiency of Kimmel's claim:

> To survive a challenge based on the federal rules' pleading requirements, a complaint must give enough factual information to state a claim to relief that is plausible on its face…. A plaintiff must provide only enough detail to give the defendant fair notice of what the claim is and the grounds upon which it rests, and, through his allegations, show that it is plausible, rather than merely speculative, that he is entitled to relief. *Gipson v. Four Cty. Comprehensive Mental Health Ctr., Inc.,* 2016 WL 1059355, at *1 (N.D. Ind. Mar. 16, 2016) (punctuation and citations omitted).

Kimmel's Complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Hively v. Ivy Tech Cmty. Coll., S. Bend*, 2016 WL 4039703, at *3 (7th Cir. July 28, 2016) (citation omitted).

    <u>The HASB admission</u>.

HASB contends that "while Kimmel alleges *(albeit incorrectly)* that the Housing Authority is not issuing vouchers, he has not and cannot demonstrate that the Housing Authority's alleged inaction is [sic] constitutes a violation of any obligation under the law." <u>HASB Br.</u>, at 10 (emphasis added). The reasonable inference to be drawn is that, contrary to Kimmel's allegations, HASB is issuing vouchers. This Court may treat HASB'S statement as a judicial admission. *Grimes v. Navigant Consulting, Inc.*, 185 F. Supp. 2d 906, 909, n. 3 (N.D. Ill. 2002) (decision on a R. 12(b)(6) motion analyzing Seventh Circuit and other precedent considering statements in litigants' briefs as admissions).

    <u>The consequences of the admission</u>.

If HASB is issuing vouchers—and Kimmel and his case manager are misinformed—then this Court may consider holding this case in abeyance for a short time while Kimmel files an application upon which HASB can make a determination. It is striking the HASB did not suggest such a simple solution, instead of seeking repeated extensions of time to file the Motion to Dismiss.

Given the admission, HASB faces a difficulty. Kimmel alleges:

> 10. On information and belief, HASB has not issued Section 8 vouchers for many years and maintains a waiting list for vouchers which lists hundreds of eligible individuals. It is unclear if Kimmel could add his name to the list or, if became listed, how soon his position on the list would advance.
>
> 11. For years HASB has informally told potential applicants that the Section 8 vouchers were unavailable and that HASB would not add additional names to the Section 8 waiting list. At present the HASB website states that the "Section 8 Waiting List is now closed." http://www.hasbonline.com/modules.php?op=modload&name=FAQ&file=index&myfaq=yes&id_cat=9 (visited May 16, 2016).
>
> 12. On February 19, 2015, the South Bend Tribune reported in an editorial, "As of 2012, the Housing Authority ran nine apartment complexes and 200 homes and administered more than 2,000 Section 8 vouchers. But money intended to be disbursed to needy families through vouchers and other programs was misused and the government ordered the repayment of $500,000." http://www.southbendtribune.com/news/opinion/our_opinion/our-opinion-fresh-start-just-what-housing-authority-needs/article_b9df0c74-34f2-561a-83a7-eb33aad908d3.html (visited May 16 2015).

(dk.1, at 4—5, ¶¶'s 9—15).

On HASB's R. 12(b)(6) Motion to Dismiss take "as true all the well-pleaded facts alleged in the complaint, and draw all inferences from those facts in the light most favorable to [Kimmel]." *Gipson, id.* One inference is that, if HASB is accepting applications, then it has illegally "not issued Section 8 vouchers for many years and maintains a waiting list for vouchers which lists hundreds of eligible individuals." A second inference is that the statement on "the HASB

11

website" that the "Section 8 Waiting List is now closed" is untrue and misleads potential applicants like Kimmel and others.

The HASB admission validates Kimmel's Fourteenth Amendment claims. HASB is a state actor, operating under color of Indiana law, a fact established by Kimmel's allegation that HASB "is an Indiana municipal housing authority established by IC 36-7-18-4, et seq." Complaint, dk. 1, at 3, ¶6.  Given the admission, HASB's website is either intentionally false or HASB has a secret, unpublished policy of accepting some Section 8 applications, a policy not made known to the public. Kimmel alleges that HASB engages in "arbitrary administration of the Section 8 voucher program and its denial of benefits to Kimmel and the Class". Id., at 8, ¶21. The contrast between the admission and the website is irreconcilable.

The term "arbitrary administration" encompasses intentional, deliberate choices by HASB in implementing the Section 8 program. The posting of information on the website is part of an official policy, not an isolated event. If HASB selectively permits some applications—while the website states that HASB has closed applications—that select, secret strategm is part of an official policy, not an isolated event.

Kimmel must allege "two-and only two-allegations…in order to state a cause of action under [§1983]" Gomez v. Toledo, 446 U.S. 635, 640 (1980). "First, the plaintiff must allege that some person has deprived him of a federal right." Id. Kimmel, as an individual with a disability receiving only SSI benefits, has a federal right to apply for and, if qualified, receive a Section 8 voucher in the HUD-funded program administered by HASB. At present, HASB's has either ceased accepting applications or is accepting them selectively in a manner to which Kimmel cannot gain access.

"Second, he must allege that the person who has deprived him of that right acted under color of state or territorial law." Id.  Kimmel alleges that HASB is a state actor.

Kimmel has alleged a claim under §1983. He sues for access to a program he needs and for which he may be qualified, but to which he cannot apply and cannot ascertain how to apply. HASB states, "Kimmel has no fundamental right to participate in Section 8." HASB Br., at11. That contention is wrong and irrelevant: Kimmel has a fundamental right to apply for a voucher and to have accurate information provided by HASB explaining the application process (with selection criteria stated).

HASB relies on *Eidson v. Pierce*, 745 F.2d 453 (7th Cir. 1984), and related cases to justify dismissal of Kimmel's §1983 claim. Those cases address questions of what process is due to Section 8 applicants, tenants and landlords; the propriety of suing HUD officers for violations in local programs; and whether landlords receiving Section 8 payments are state actors or otherwise subject to suit because of contracts with local funding agencies. *E.g. Fincher v. S. Bend Heritage Found.*, 606 F.3d 331 (7th Cir. 2010). The *Eidson* line does not consider a Section 8 program operated by a public housing authority so flawed in administration that its lawyers contradict (on a R. 12(b)(6) motion). what its website says.

The *Eidson* line encountered rejection by federal courts outside the Seventh Circuit and by state courts. *Madera v. Sec'y of Exec. Office of Communities & Dev.,* 636 N.E.2d 1326, 1331 (Mass. 1994) (analyzing federal and state cases and citing Ninth Circuit precedent conflicting with *Eidson*); *Baldwin v. Hous. Auth. of City of Camden, NJ*, 278 F. Supp. 2d 365, 379 (D.N.J. 2003) (rejecting *Eidson*); *Bray v. McKeesport Hous. Auth.*, 114 A.3d 442, 455 (Pa. Commw. Ct. 2015) (rejecting *Eidson* and holding that "applicants for public housing have a legitimate expectation that their application will be fully considered and not unfairly denied and, as such, have a cognizable property interest in having their applications considered in accordance with the guidelines in the Housing Act and regulations." *Id.*, (punctuation and citations omitted).

Kimmel recognizes that the Seventh Circuit refused to overturn *Eidson* in *Fincher v. S. Bend Heritage Found.*, 606 F.3d at 332. *Fincher* presented a due process claim against a Section 8 landlord refusing to rent to a prospective tenant already holding a voucher. The *Fincher* plaintiff, possessing the voucher (unlike Kimmel), had achieved Section 8 eligibility. *Fincher* is not dispositive of *Eidson*'s application to a Kimmel's allegation of the futility and apparent impossibility of his applying for a voucher.

5. <u>Kimmel states supplemental claims under Indiana law</u>.

HASB does not address Kimmel's supplemental claims under two state law theories: Art. 1, §12 and §23 of the Indiana Constitution. Section 12 guarantees "due course of law", which Indiana courts interpret as due process. *Bradley v. City of New Castle*, 764 N.E.2d 212, 218 (Ind. 2002) ("[D]ue process and due course of law may require judicial relief where plausible claims of fraud or discrimination are established."). *Id.*, 218.  Section 23 states, "The General Assembly shall not grant to any citizen, or class of citizens, privileges or immunities, which, upon the same terms, shall not equally belong to all citizens." It is analogous to the equal protection clause of the Fourteenth Amendment, but Indiana courts "are under no obligation to follow Fourteenth Amendment jurisprudence in resolving a Section 23 issue." *Collins v. Day,* 644 N.E.2d 72, 75 (Ind. 1994).

Indiana permits a plaintiff to assert "public standing", which:

> …recognize[s] certain situations in which public rather than private rights are at issue and hold that the usual standards for establishing standing need not be met. When a case involves enforcement of a public rather than a private right the plaintiff need not have a special interest in the matter nor be a public official. Specifically, the public standing doctrine eliminates the requirement that the relator have an interest in the outcome of the litigation different from that of the general public.
> *State ex rel. Cittadine v. Indiana Dep't of Transp.*, 790 N.E.2d 978, 980 (Ind. 2003).

The Indiana Supreme Court has differed with the Seventh Circuit on questions of housing law. *Villas W. II of Willowridge Homeowners Ass'n, Inc. v. McGlothin*, 885 N.E.2d 1274, 1281 (Ind. 2008) (rejecting Seventh Circuit interpretation of federal Fair Housing Act in light of subsequent decisions from other courts). Indiana courts may re-examine *Eidson* after considering *Madera* and *Bray*. Kimmel states claims under state law and has standing to litigate those claims.

## Conclusion

This Court should deny HASB's Motion to Dismiss.

          Respectfully submitted,
          HULL LAW FIRM
          ATTORNEY FOR PLAINTIFF
          /s/Kent Hull

          Kent Hull, Attorney No.: 8580-71

105 E. Jefferson, Suite 800
South Bend, IN  46601
(574) 239-7029
(574) 287-3116
lowell.k.hull.10@nd.edu


## CERTIFICATE OF SERVICE

I certify that on August 27, 2016, I served a copy of the foregoing *Plaintiff's Brief Opposing Motion to Dismiss by Defendant* on opposing counsel via electronic transmission through the Clerk of this Court.

          /s/Kent Hull